IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal No.:  18-37 |
| ALEKSANDRAS PANOVAS | |

### SENTENCING MEMORANDUM

AND NOW, comes defendant Aleksandras Panovas, by and through his counsel, James W. Kraus, and files the within Sentencing Memorandum regarding the above-captioned matter.

### I.      PRELIMINARY STATEMENT

Aleksandras Panovas comes before this Court, accepting responsibility for the actions that have brought him to this point.  He understands the seriousness of the conduct to which he has entered a plea of guilty, as well as the important ends that this Court's sentence must serve.  He acknowledges that this Court must strike the appropriate balance among a multitude of factors, including the need to protect the community, deter future misconduct and the rehabilitative needs of Mr. Panovas.  Essentially, Mr. Panovas respectfully requests fairness from this Court as it makes this important decision.

Mr. Panovas has genuine regret for engaging in the conduct that has lead to his plea of guilty and conviction.  He recognizes the wrongfulness of his actions and the consequences of his conduct, and has demonstrated acceptance of responsibility.  This memorandum does not seek to excuse the conduct underlying Mr. Panovas' plea of guilty and conviction.  To the contrary, the purpose of this memorandum is to provide the "totality of the circumstances" under 18 U.S.C. §3553(a) surrounding Mr. Panovas and the offense to enable the Court to determine a fair and just sentence.

In accordance with the discussion set forth more fully below, Mr. Panovas is requesting that this honorable Court give studied consideration to all relevant factors, and impose a sentence that does not require further imprisonment. We acknowledge the gravity of this request. It is believed, however, that a sentence without additional incarceration would be supported by fair consideration of the relevant factors, including the underlying facts of this case, Mr. Panovas' personal characteristics, applicable case law, the advisory nature of the U.S. Sentencing Guidelines ("U.S.S.G."), and important considerations set forth in 18 U.S.C. §3553(a).

## II.     BIOGRAPHICAL INFORMATION

Aleksandras Panovas, now age 44, is a husband and a father of five children. Prior to his arrest on the charges in this case, he lived in London, England. At the time of his arrest, Mr. Panovas was living with his wife Diana and their three school age children. He also has two sons from a prior marriage. They were born in the United States when Mr. Panovas was residing in Chicago, Illinois. He has continued to maintain a relationship with them throughout the years.

Mr. Panovas was born and raised in the Lithuanian port city of Klaipeda, and grew up in less than ideal circumstances. Although both of Mr. Panovas' parents worked during his childhood, they lived essentially in poverty. Mr. Panovas' father died approximately 7 years ago, the apparent victim of an unsolved homicide.

After finishing secondary school, Mr. Panovas served two years in the Lithuanian Army. Following his discharge from the Army, he entered a program of formal training in ship building and metal work. He finished that training within two years, attaining the equivalent of an associate degree.

In 1997, with hopes of finding greater job opportunity, Mr. Panovas traveled to the United States. He settled in and established residency in Chicago, Illinois, obtaining employment working

for a sheet metal company, which allowed him to apply his previous training in shipbuilding. Mr. Panovas spent 5 years in residency in the United States. It was during this time that he married for the first time, and his two older sons were born. He eventually returned to Lithuania in 2002, but found it difficult to find employment sufficient to support his family. He eventually moved to London, England in 2003, again seeking better economic opportunity for hisfamily.

As this Court is aware, Mr. Panovas was originally arrested on the charges in this case by the Metropolitan Police in London, England on March 27, 2018. Following his arrest, he remained in official custody, primarily at HM Prison Wandsworth in Wandsworth, London. He remained there until, having voluntarily waived extradition, he was placed in the custody of the United States and transported to the Western District of Pennsylvania. He made his initial appearance before this Court on March 1, 2019, and was officially detained  For the nearly 12 months of his detention in London, Mr. Panovas was able to see his wife and family at the prison only sporadically. Since his extradition in March of 2019, he has been completely separated from his family, and has not seen any of them for more than one year.

Mr. Panovas' absence from the home has created great financial and emotional turmoil for his family. Prior to his arrest in March of 2018, Mr. Panovas had a very close relationship with his wife and young children. Although he has done his best to maintain contact, the separation has taken its toll. His wife and children have experienced great hardship as a result of his arrest and detention in this matter. They have struggled to remain in their home. Of course, he takes full responsibility for the extreme hardship that this has caused his wife and children. He is dedicated to making things right when he has the opportunity to be reunited with them.

### III.     DISCUSSION OF APPLICABLE LAW AND GUIDANCE

A.     **The Court's sentencing discretion**

A trial court has substantial discretion when imposing a sentence. As the Supreme Court stated in *United States v. Booker*, 543 U.S. 220, 233 (2005), it has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *Id*. The Court explained that this discretion includes using all available information when arriving at its sentence determination because the law provides that:

> [N]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

*Id*. at 251 (citing 18 U.S.C. §3661). The Court further held the sentencing guidelines are not mandatory but rather merely **one factor** to be considered at sentencing. *Id*. at 264.

As provided by statute, this Court must impose a sentence "sufficient, but not greater than necessary" to fulfill the purposes of sentencing. *See* 18 U.S.C. §3553(a). In the post-*Booker* era, rather than focusing **only** on the sentencing guidelines when imposing a sentence, the trial court must impose a "reasonable" sentence that consider all of the factors set forth in 18 U.S.C §3553.[1]

B.     **Consideration of 18 U.S.C. §3553(a) factors**

Section 3553(a) of Title 18 of the United States Code states:

> (a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider
>
>> (1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[1] After *Booker*, the Supreme Court emphasized that "[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines is reasonable." *See e.g. Nelson v. United States*, 555 U.S. 350, 352 (2009).

4

  (2) the need for the sentence imposed

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3) the kinds of sentences available;

  (4) the kinds of sentence and the sentencing range established for

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-

      (i) issued by the Sentencing Commission . . .

  (5) any pertinent policy statement

    (A) issued by the Sentencing Commission…

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

  The factors set forth above constitute a framework for a holistic and common sense approach to sentencing. There should be no single prerequisite for a specific punishment in any case. Some of the factors will and should be more prominent than others depending on the underlying facts of each particular case. These factors demonstrate genuine recognition that the needs of justice can be met in a variety of ways, and that courts should be open to considering all sentencing options.

1.  **18 U.S.C. § 3553(a)(1): "[T]he nature and circumstances of the offense and the history and characteristics of the defendant."**

The nature of and circumstances of the offense in this matter are serious, and Mr. Panovas acknowledges the gravity of this matter.

Mr. Panovas is 44 years old, and comes before this Court for sentencing with a criminal history category I. He has served a significant amount of time in detention leading up to the sentencing in this matter. He has experienced more than two years of separation from his family and home. He now has the opportunity to make the meaningful change necessary to truly turn his life around to the benefit of himself, his family and the community. Notwithstanding his mistakes, he has been able to maintain his family at a stable location for an extended period. It is believed that Mr. Panovas can use this as a foundation for moving beyond his conviction here, and making a positive impact. He requests that the Court impose a sentence that allows him the opportunity to make good on that commitment.

Mr. Panovas has, largely through self-teaching, become quite adept with computer technology and software. He has demonstrated great aptitude for it, and believes that, given the opportunity, he can support his family with a job in the field of information technology. He is keenly aware that it was through the use of information technology that he became involved in the conduct for which he has been convicted, but believes that his skills can be used to good effect, and that this may help make up for the harm he has done.

Mr. Panovas has taken important steps to move forward and beyond the conduct that resulted in the charge and conviction in this case. These steps demonstrate that he truly accepts responsibility for his actions, and wishes to move forward in a positive manner. First, Mr. Panovas waived extradition from the United Kingdom, and voluntarily submitted himself to the custody of the United States. Approximately two months after arriving in the United States, Mr. Panovas

further demonstrated his acceptance of responsibility by changing his plea and entering a plea of guilty to the charge of conspiracy to commit money laundering.  He did so prior to filing any pretrial motions or requesting that the case be scheduled for trial.  He moved forward with the changing of his plea to guilty despite great anxiety of the consequences of pleading guilty, including the continued separation from his family.

> 2. **18 U.S.C. §3553(a)(2)(A)-(C):  "The need for the sentence imposed … to reflect the seriousness of the offense…promote respect for the law; afford adequate deterrence to criminal conduct; …protect the public."**

Section 3553(a)(2)(A)-(C) directs courts to consider, among other things, the necessity of imposing a punishment that promotes respect for the law, deters future criminal conduct and protects the public.  It is respectfully submitted that the charging of Mr. Panovas, his pretrial detention, and his extradition from the United Kingdom to the United States, have all served these very important purposes.

Mr. Panovas has no prior criminal record.  He has a very strong bond with and dedication to his family.  He is intelligent, and has demonstrated the ability to learn new skills and be productive.  He is a peaceful man, who has not been charged in any way with inflicting or threatening physical harm on another.  Moreover, at all times, beginning with the day of his arrest and continuing to this date, he has afforded all members of law enforcement the highest level of respect.  In all of this, he has demonstrated that there is no further need for punitive measures or for a jail sentence based on the need to protect the public or deter future criminal acts by Mr. Panovas.

3.     18 U.S.C. §3553(a)(3).  "The kinds of sentences available."

Mr. Panovas does not dispute the findings of the office of Probation regarding the offense level, the criminal history category and the range of imprisonment for that offense level under the United States Sentencing Guidelines.  It is believed and therefore asserted here that Mr. Panovas is also eligible for additional reductions for acceptance of responsibility (2 points) and timely notification (1 point).

The argument for a sentence without further imprisonment is not intended to minimize the seriousness of Mr. Panovas' unlawful conduct, which he has acknowledged.  He has demonstrated the important first step in this regard by accepting full responsibility for his misconduct as noted in the presentence investigation report.  He regrets what he did and understands that there is no legal or moral excuse for his actions.

Accordingly, as discussed more fully above, the request for a sentence that would allow for punishment without further prison is based not on a minimization of the conduct at issue, but rather a sincere belief that the true purposes of sentencing can be met without any more time in prison.  This Court is empowered, when it deems it appropriate, to vary from the guidelines in a manner that would permit a sentence without further imprisonment.  It is respectfully submitted that the needs of justice, the community, and Mr. Panovas could all be met with such a sentence.

### IV.     CONCLUSION

Based on the foregoing, Defendant, Aleksandras Panovas, recognizing his guilt, respectfully requests this honorable Court impose a sentence based on the principles of fundamental fairness, the advisory nature of the U.S. Sentencing Guidelines in light of *United States v. Booker*, the §3553 factors, and the individualized needs of Mr. Panovas.  To that end, he respectfully requests that this court impose a sentence that does not require further imprisonment.

                                        Respectfully submitted,

                                        PIETRAGALLO GORDON ALFANO
                                          BOSICK & RASPANTI, LLP


By:   */s/ James W. Kraus*
        JAMES W. KRAUS, ESQUIRE
        Pa. I.D. No.: 56881
        Counsel for Aleksandras Panovas

        The Thirty-Eighth Floor
        One Oxford Centre
        Pittsburgh, PA 15219

        412-263-2000
        412-263-2001 (Fax)

Date:   March 26, 2020